57 F.3d 1066
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 In re: G.G. MOSS COMPANY, INCORPORATED, Debtor.
JOHN F. AMES & COMPANY, LTD., P.C., CPAS, Plaintiff-Appellant,
v.
Watson M. MARSHALL, Trustee, Defendant-Appellee,
United States Trustee, Party-in-Interest,
and
David R. Duncan, Acting U.S. Trustee for Region Four,
Party-in-Interest.
 No. 94-2587.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 5, 1995.
Decided: June 15, 1995.
 
 ARGUED: John Frederick Ames, Richmond, VA, for Appellant. Gregg Robert Nivala, Attorney in Charge, OFFICE OF THE UNITED STATES TRUSTEE, Richmond, VA, for Appellee.
 Before NIEMEYER and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 John F. Ames & Company, Ltd., P.C. ("Ames") appeals from the denial of its request for the balance of the fees it claimed for professional accounting services provided to the bankruptcy estate of G.G. Moss Co., Inc. ("Moss Co." or "estate"). Finding no error, we affirm.
 
 
 2
 * At the request of Watson M. Marshall, Trustee for the estate ("Trustee"), Ames was appointed to perform accounting services for the estate on January 29, 1992. Two other accountants had previously been engaged to audit the Moss Co. records; Ames was engaged solely to prepare tax returns.
 
 
 3
 Ames spent some time reviewing Moss Co. records and performing auditing-type tasks, but never completed any tax returns. As early as June 1992, Ames reported to the Trustee and to the U.S. Trustee discrepancies in the Moss Co. records. Ames claimed that the discrepancies were evidence of defalcation by an employee of the Trustee, which required investigation before Ames could finish preparing the tax returns, and that it was unable to proceed with this work without guidance from the Trustee or the U.S. Trustee. No guidance was ever given.
 
 
 4
 Nevertheless, on July 24, 1992, Ames filed an application for compensation for professional services in the bankruptcy court, requesting $6,925.00 in fees and $36.00 in expenses. The bankruptcy court awarded Ames $4,000.00 in fees and $36.00 in expenses. The court ordered the balance of $2,925.00 held pending further order regarding its allowance, presumably anticipating allowing recovery upon Ames's completion of the tax returns.
 
 
 5
 In April 1993, the Trustee engaged another accountant who produced completed tax returns, and did so for less compensation than the amount claimed by Ames,[1] apparently without the same difficulties encountered by Ames. Moreover, Ames never turned over any of its work product to the succeeding accountant. The estate therefore ultimately received no benefit from Ames' work. When Ames moved that the bankruptcy court award it the remaining $2,925.00 in November 1993, the bankruptcy court denied the motion on the grounds that Ames had failed to complete the task for which it was engaged and had exceeded the scope of its engagement. The bankruptcy court accordingly entered an order dated April 14, 1994, stating that the previously awarded $4,000.00 was sufficient compensation for services rendered. Ames appealed to the district court, which, by order dated November 9, 1994, affirmed on similar grounds, holding that the bankruptcy court did not abuse its discretion in denying the additional fees.
 
 
 6
 Ames now appeals to this Court, claiming that the lower courts' decisions must be reversed because the bankruptcy court failed to correctly calculate the fees due and that the denial of additional fees is not supported by sufficiently detailed calculations to permit review.
 
 II
 
 7
 We review fee awards for professional services for abuse of discretion, and for any clearly erroneous factual findings upon which an award may have been based. Harman v. Levin, 772 F.2d 1150, 1153 (4th Cir.1985); Fed. R. Bankr.P. 8013. Under that standard, we will not disturb findings of fact supporting the award unless, after a complete review of the record, we are "left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 8
 Section 330(a) of the Bankruptcy Code permits a bankruptcy court to award to a professional person such as an accountant "reasonable compensation for actual, necessary services rendered" to the bankruptcy estate, based on "the nature, the extent, and the value of such services." 11 U.S.C.A. Sec. 330(a) (West Supp.1995). Although circuit precedent requires a district court to address various factors when evaluating the reasonableness of a fee award for professional services,[2]such a detailed analysis is unnecessary when no fees are found to be owing at all. In such circumstances, determinations such as "the novelty and difficulty of the questions raised" or "the attorney's expectations at the outset of the litigation" have no relevance because no amount of compensation is reasonable when no services are rendered.
 
 
 9
 Here, we cannot conclude that the bankruptcy court's findings on this critical issue were clearly erroneous. It is obvious that Ames sought additional compensation to that earlier received for services it never rendered. It is undisputed that it did not complete the task it was engaged to perform--the preparation of tax returns for the estate. Moreover, even the work that it did perform and for which it claims additional compensation, presumably on a theory of quantum meruit, did not produce any value to the estate. Much of the work--performing unrequested auditing services and an unrequested investigation into possible embezzlement--was not the work for which Ames was hired. None of the work product was turned over to the successor accountant who completed the work for which Ames was specifically engaged. The bankruptcy court's findings that Ames had not performed its assigned task and had exceeded the scope of its employment are therefore supported by the record and support the ultimate discretionary decision that no additional fees should be awarded.[3]
 
 
 10
 Consequently, the judgment of the district court is
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 John Ames testified for Ames before the bankruptcy court that Ames's preliminary work justified compensation of $6925.00 in fees and that completion of the tax returns would have cost the estate approximately $2,000.00 more in fees, for a total of $8,925.00. JA 101. In contrast, the replacement accountant charged only $5,920.54 in fees for the entire job. JA 11-12
 
 
 [2]
 Specifically:
 (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.
 Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978) (relying on Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1974)); Harman, 772 F.2d at 1152 n. 1.
 
 
 [3]
 Whether, in light of these amply supported findings, Ames was entitled to the $4,000 award made, is not before us